TROUTMAN SANDERS LLP
Justin Nahama, Bar No. 281087
justin.nahama@troutman.com
Wynter L. Deagle, Bar No. 296501
wynter.deagle@troutman.com
Anne-Marie Dao, Bar No. 282632
Anne-marie.dao@troutman.com
11682 El Camino Real, Suite 400
San Diego, CA  92130-2092
Telephone:   858-509-6000
Facsimile:    858-509-6040

WHITMYER IP GROUP LLC
Michael J. Kosma, *admitted pro hac vice*
Christopher J. Stankus, *pro hac forthcoming*
Robert D. Keeler, *pro hac forthcoming*
Benjamin N. Luehrs, *pro hac forthcoming*
Whitmyer IP Group LLC
600 Summer Street
Stamford, CT  06901
Telephone:  203-703-0800
Facsimile:  203-703-0801
Email: mkosma@whipgroup.com
        cstankus@whipgroup.com
        rkeeler@whipgroup.com
        bluehrs@whipgroup.com
        litigation@whipgroup.com

*Attorneys for Defendants Hybrid Athletics, LLC
and Robert Orlando*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYLETE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYBRID ATHLETICS, LLC, a Connecticut limited liability company; and ROBERT ORLANDO, an individual,<br><br>Defendants. | Case No. 19-cv-02494 WQH-AGS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF ITS MOTIONS TO:**<br><br>**(1) DISMISS COUNTS 1-6 PER FED. R. CIV. P. 12(B)(6); AND**<br><br>**(2) STRIKE COUNTS 4-6 PER CAL. CODE CIV. PRO. § 425.16**<br><br>Hearing: March 23, 2020<br>No Oral Argument Unless Requested by the Court<br>Judge: Hon. William Q. Hayes<br>Dept: 14B (14th Floor) |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on March 23, 2020, or at such other time as the Court may hear this matter, before the Honorable William Q. Hayes in Courtroom #14B, 14th Floor of the United States District Court for the Southern District of California, James M. Carter and Judith N. Keep Courthouse, located at 333 W. Broadway, San Diego, California, Defendants Hybrid Athletics, LLC and Robert Orlando (collectively, "Hybrid") will and hereby do respectfully move the Court to dismiss Counts 1-6 of Hylete, Inc.'s Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and strike Counts 4-6 pursuant to Cal. Code Civ. P. § 425.16. In addition, Hybrid respectfully requests that it recover from Hylete its attorneys' fees and costs incurred in defending this action. Code of Civil Procedure Section 425.16, subdivision (c), mandates that a prevailing defendant "shall" recover such monies. Hybrid further requests that it recover from Hylete its attorneys' fees related to Hylete's Lanham Act claim pursuant to 15 U.S.C. Section 1117(a).

Dated: February 18, 2020                    Respectfully submitted,

                                            By:/s/ Justin Nahama, Esq.
                                            TROUTMAN SANDERS LLP
                                            Justin Nahama, Bar No. 281087
                                            justin.nahama@troutman.com
                                            Wynter L. Deagle, Bar No. 296501
                                            wynter.deagle@troutman.com
                                            Anne-Marie Dao, Bar No. 282632
                                            Anne-marie.dao@troutman.com
                                            11682 El Camino Real, Suite 400
                                            San Diego, CA  92130-2092

                                            WHITMYER IP GROUP LLC
                                            Michael J. Kosma, *pro hac vice*
                                            Christopher J. Stankus, *pro hac forthcoming*
                                            Robert D. Keeler, *pro hac forthcoming*
                                            Benjamin N. Luehrs, *pro hac forthcoming*
                                            600 Summer Street
                                            Stamford, CT  06901

*Attorneys for Defendants Hybrid Athletics, LLC and Robert Orlando*

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE
41461666v3

TROUTMAN SANDERS LLP
Justin Nahama, Bar No. 281087
justin.nahama@troutman.com
Wynter L. Deagle, Bar No. 296501
wynter.deagle@troutman.com
Anne-Marie Dao, Bar No. 282632
Anne-marie.dao@troutman.com
11682 El Camino Real, Suite 400
San Diego, CA  92130-2092
Telephone:   858-509-6000
Facsimile:    858-509-6040

WHITMYER IP GROUP LLC
Michael J. Kosma
Christopher J. Stankus
Robert D. Keeler
Benjamin N. Luehrs
Whitmyer IP Group LLC
600 Summer Street
Stamford, CT  06901
Telephone:  203-703-0800
Facsimile:  203-703-0801
Email: mkosma@whipgroup.com
     cstankus@whipgroup.com
     rkeeler@whipgroup.com
     bluehrs@whipgroup.com
     litigation@whipgroup.com

*Attorneys for Defendants Hybrid Athletics, LLC
and Robert Orlando*

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYLETE, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>v.<br><br>HYBRID ATHLETICS, LLC, a Connecticut limited liability company; and ROBERT ORLANDO, an individual,<br><br>        Defendants. | Case No. 19-cv-02494 WQH-AGS<br><br>**DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF ITS MOTIONS TO:**<br><br>**(1) DISMISS COUNTS 1-6 PER FED. R. CIV. P. 12(B)(6); AND**<br><br>**(2) STRIKE COUNTS 4-6 PER CAL. CODE CIV. PRO. § 425.16**<br><br>Hearing: March 23, 2020<br>No Oral Argument Unless Requested by the Court<br>Judge: Hon. William Q. Hayes<br>Dept: 14B (14th Floor) |

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

41461666v3

## **Table of Contents**

I. Introduction ........................................................................................................ 1

II. Relevant Background ........................................................................................ 3

    A. Events Leading to Hybrid's 2013 Opposition of Hylete's ☿ Logo ............. 3

    B. Consumer Confusion Compels Orlando's Response ..................................... 6

    C. CrossFit, Inc. Bans Hylete from CrossFit Events ▮▮▮Redacted▮▮▮
▮▮▮▮▮▮▮▮▮ ............................................................................................... 8

    D. Rampant Confusion Continues Between Hylete and Hybrid ..................... 10

    E. Hybrid Opposes Hylete's Trademark Application for ☿ on the Basis of a Likelihood of Confusion ............................................................................. 11

    F. ▮▮▮▮▮▮▮Redacted▮▮▮▮▮▮▮ ............. 13

    G. Hybrid Files District Court Action for Willful Trademark Infringement and Uncovers Additional Confusion Evidence ................................................. 13

    H. Hylete Threatens Orlando with a New Lawsuit After Losing its Federal Circuit Appeal, its Motion to Amend in the CT Action, and its Requested *En Banc* Review of Federal Circuit Appeal ...................................................... 16

III. Hylete's Counts 4-6 Must Be Stricken ........................................................ 16

    A. Legal Standard of California's Anti-SLAPP Statute ................................. 16

    B. Counts 4-6 Arise Directly Out of Defendants' Litigation Conduct ........... 17

    C. Hylete Has No Reasonable Probability of Success on the Merits ............. 19

    D. Litigation Privilege Bars Any Probability of Success ............................... 20

    E. Defendants Are Entitled to Costs and Attorneys' Fees .............................. 22

IV. All Counts in Hylete's Complaint Fail Per Rule 12(b)(6) ............................ 22

    A. Counts 1 and 2 Fail to Allege Fraud ......................................................... 22

    B. Counts 1 and 2 are Barred by Defendant Preclusion ................................ 23

    C. Counts 3-6 Fail to State a Claim ............................................................... 23

        1. Counts 3-6 are Barred by Litigation Privilege ................................... 23

2.    Count 3 Fails to State a Claim ............................................................ 23

D.    All Counts Are Barred by Statutes of Limitations or Laches ...................... 25

V.    Conclusion ............................................................................................................ 25

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

41461666v3

1

## **Table of Authorities**

2

**Cases**

3

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,

4

No. 11-cv-2243-CW, 2012 WL 3877783 (N.D. Cal. Sept. 6, 2012)..............................18

*Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*,

5

378 F. App'x 652 (9th Cir. 2010)..................................................................................24

6

*Blaha v. Rightscorp, Inc.*,

7

No. 14-cv-9032-DSF, 2015 WL 4776888 (C.D. Cal. May 8, 2015)...........................21

*Contreras v. Dowling*,

8

5 Cal. App. 5th 394 (2016) ...........................................................................................21

9

*Doe v. Gangland Prods., Inc.*,

10

730 F.3d 946 (9th Cir. 2013) ........................................................................................17

*Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc.*,

11

314 F.3d 48 (2nd Cir. 2002) .........................................................................................24

12

*Freecycle Network, Inc. v. Oey*,

13

505 F.3d 898 (9th Cir. 2007) ...................................................................................20, 24

*Gabrielson v. Montgomery Ward & Co.*,

14

785 F.2d 762 (9th Cir. 1986) ........................................................................................25

15

*Grant & Eisenhofer, P.A. v. Brown*,

No. 17-cv-5968-PSG, 2017 WL 6343506 (C.D. Cal. Dec. 6, 2017)...........................21

16

*Hilton v. Hallmark Cards*,

17

599 F.3d 894 (9th Cir. 2010) ...................................................................................17, 18

*Hiraga v. Arena*,

18

90 U.S.P.Q.2d 1102 (T.T.A.B. 2009) ...........................................................................23

19

*Intellimedia Sports Inc. v. Intellimedia Corp.*,

20

Canc. No. 24, 801, 1997 WL 398344 (T.T.A.B. May 20, 1997) .................................23

*Ketchum v. Moses*,

21

24 Cal. 4th 1122 (2001) ................................................................................................22

22

*Kulkarni v. Upasani*,

23

659 F. App'x 937 (9th Cir. 2016) .................................................................................21

*Ludwig v. Superior Court*,

24

37 Cal. App. 4th 8 (1995) .............................................................................................18

25

*Maximum Availability Ltd. v. Vision Sols., Inc.*,

No. 10-cv-1488-GW(RZX), 2011 WL 13176820 (C.D. Cal. Dec. 12, 2011)...............25

26

*Metabolife Int'l, Inc. Wornick*,

27

264 F.3d 832 (9th Cir. 2001) ........................................................................................20

28

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE
41461666v3

*Mindys Cosmetics, Inc. v. Dakar*,
611 F.3d 590 (9th Cir. 2010) ....................................................................17, 19

*Nasalok Coating Corp. v. Nylok Corp.*,
522 F.3d 1320 (Fed. Cir. 2008) ........................................................................23

*People ex rel. Gallegos v. Pac. Lumber Co.*,
158 Cal. App. 4th 950 (Feb. 1, 2008) ..............................................................21

*Pettitt v. Levy*,
28 Cal.App.3d 484 (1972) .................................................................................21

*Rusheen v. Cohen*,
37 Cal. 4th 1048 (2006) ....................................................................................21

*Shire City Herbals, Inc. v. Blue*,
No. 15-30069-MGM, 2016 WL 2757366 (D. Mass. May 12, 2016) .........18, 19

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..........................................................................22

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
549 F. Supp. 2d 1168 (N.D. Cal. 2007) ...........................................................24

**Statutes**

Cal. Code Civ. P. § 17208.................................................................................25
Cal. Code Civ. P. § 338(d) ................................................................................25
Cal. Code Civ. P. § 339......................................................................................25
Cal. Code Civ. P. § 425.16.........................................................16, 17, 22, 25
Conn.Gen.Stat. § 42-110(g) ..............................................................................25

**Rules**

Fed. R. Civ. P. 12 ..............................................................................................22

19cv02494

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE
41461666v3

1

## I.   **Introduction**

2      Defendants Hybrid Athletics, LLC, ("Hybrid") and Robert Orlando ("Orlando")

3  (collectively, "Hybrid"), respectfully move to dismiss and/or strike all counts of Plaintiff

4  Hylete, Inc.'s ("Hylete") Complaint, Dkt. 1 ("Hylete Compl.").

5      *First*, Counts 4-6 of Hylete's Complaint must be stricken pursuant to California's

6  Anti-SLAPP statute, Cal. Civ. P. Code § 425.16. Hylete's claims were filed to retaliate

7  against Hybrid for protecting and enforcing its trademark rights against Hylete and its

8  founders for their willful and intentional infringement. Hylete cannot show that it has any

9  probability of success on the merits of these claims. Moreover, Hylete cannot identify a

10  single false statement by Orlando. Hylete's gamesmanship should not be condoned.

11      By way of brief background, in 2013 Hybrid filed an opposition proceeding before

12  the Trademark Trial and Appeal Board to prevent Hylete from registering its infringing

13  ⊌ logo. Ex. 2.[1] After a full trial, the TTAB determined Hylete's ⊌ logo was likely to

14  cause confusion with Hybrid and its 👐 trademark and precluded registration of Hylete's

15  ⊌ logo. Ex. 3 at 22. After unsuccessfully seeking reconsideration before the TTAB, the

16  Federal Circuit unanimously upheld the TTAB's finding on appeal and further denied

17  Hylete's request for Reconsideration and Rehearing *En Banc*. *See* Exs. 4 & 51. Hybrid's

18  parallel proceeding against Hylete and its founders alleging willful infringement, filed in

19  2017, remains pending in the District of Connecticut ("CT Action"). Ex. 5.

20      Hylete's frivolous, vindictive action was filed to harass and intimidate Hybrid and

21  its sole owner, Mr. Orlando, and to chill and suppress Orlando's constitutional right to

22  petition. Hylete brought this case in retaliation of Hybrid's successful enforcement of its

23  trademarks against Hylete. Tellingly, Hylete's CEO emailed Mr. Orlando directly and

24  threatened that if Hybrid did not walk away from the CT Action, he would "relish in

25

26  ─────────────

[1] Unless otherwise noted, citations to "Ex." refer to exhibits listed in the Table of

27  Exhibits above and attached to the Declaration of Michael J. Kosma ("Kosma Dec.").

Citations to exhibit page numbers refer to the page number of the exhibit and do not

28  count the exhibit cover page.

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE                    19cv02494

41461666v3

[Orlando] losing everything [he] own[s]" and will "decimate" Orlando and his family. Ex. 1. Hylete knows its claims have no basis in law or fact and for this reason Hylete must be sanctioned, its claims must be dismissed or stricken, and Hybrid must be awarded its attorneys' fees for this Motion.

In its complaint, Hylete identifies seven statements that fit into three categories: (a) three private statements by Orlando concerning Hybrid's successful litigation against Hylete; (b) two public Facebook posts correcting actual consumer confusion; and (c) two independent third-party statements by third-party CrossFit, Inc. employees, with which Hybrid or Orlando had no involvement (collectively, the "Asserted Statements").

All the Asserted Statements made by Orlando are non-actionable opinion and/or were made to further the objective of curtailing Hylete's infringement. As such, Hylete cannot identify a single false statement by Orlando. The Asserted Statements by Orlando directly led to and resulted in Hybrid filing the TTAB administrative proceeding and CT Action, where they have been used as evidence. Because these statements are made pursuant to Hybrid's Constitutional right to petition, Hylete's claims must be stricken per California's anti-SLAPP statute. Moreover, not only are the Asserted Statements made by CrossFit not actionable, because Hylete cannot establish that Orlando directed, controlled, solicited, or influenced these statements, the counts based on these statements must also be stricken.

Accordingly, Counts 4-6 of Hylete's Complaint must be stricken pursuant to California's Anti-SLAPP statute, Cal. Civ. P. Code § 425.16

*Second*, Counts 1-6 must be dismissed for failure to state a claim. Regarding Counts 1 and 2, Hylete failed to plead any facts that can give rise to fraud, and they cannot be brought because of defendant preclusion arising from the CT Action. Counts 3-6 must be dismissed because the complained-of acts are protected by litigation privilege, and/or Hylete has failed to show necessary elements. For example, Hylete cannot prove that the Asserted Statements are false and/or misleading.

*Finally,* all counts are barred by the statute of limitations or laches.

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE
41461666v3

## II.   **Relevant Background**

Hylete has identified seven Asserted Statements that form the basis of its complaint. The background and identification of each statement is provided below.

A. Events Leading to Hybrid's 2013 Opposition of Hylete's ⟡ Logo

Hybrid is a dynamic, multifaceted fitness company and well-known brand founded in 2008 and owned and operated by Mr. Orlando—a famous CrossFit and Strongman athlete. Ex. 6 at ¶¶ 1-2, 10-15, 28, 29, 38. Hybrid offers and conducts various fitness and health services, such as training and fitness classes, and sells apparel and training equipment. *Id.* at ¶¶ 6-9. Hybrid's goods and services are sold under Hybrid's trademarks, which it owns at common law and through U.S. Reg. Nos. 4722185 ("HYBRID ATHLETICS"), and 4480850 and 4609469 (⬡ logo) (collectively, "Hybrid's Marks"). *Id.*; Ex. 5 at 34-39.

Hylete is a fitness apparel company founded by Ronald Wilson ("Wilson") and Mathew Paulson ("Paulson"). Ex. 5 at ¶¶ 9, 12, 49-50; Ex. at 7 ¶¶ 9, 12, 49-50; Ex. 8 at ¶¶ 9, 12, 49-50. Hylete is the owner of U.S. Reg. No. 4318646 for the trademark "HYLETE", and App. No. 85837045 for the logo ⟡. Ex. 5 at ¶¶ 53, 54; Ex. 7 at ¶¶ 53, 54; Ex. 8 at ¶¶ 53, 54.

Prior to forming Hylete, Wilson and Paulson witnessed first-hand Hybrid's Marks and success in selling athletic apparel through a co-branding relationship that began in 2010 between Hybrid and a company called "JACO". *See* Ex. 5 at ¶¶ 83-86, 95-100, 117-123, and Exhibits E & F thereto; Ex. 7 at ¶¶ 83-86, 95-100, 117-123; Ex. 8 at ¶¶ 83-86, 95-100, 117-123. JACO manufactured athletic shorts co-branded with Hybrid's ⬡ logo. Ex. 5 at ¶ 83; Ex. 7 at ¶ 83; Ex. 8 at ¶ 83. JACO was started by Wilson, who designed the co-branded shorts. Ex. 5 at ¶¶ 110, 115, 117, 123; Ex. 7 at ¶¶ 110, 115, 117, 123; Ex. 8 at ¶¶ 110, 115, 117, 123. Paulson acted as a sales director and marketing manager for JACO, serving as one of Orlando's main contacts at JACO. Ex. 5 at ¶¶ 89-92; Ex. 7 at ¶¶ 89-92; Exhibit 8 at ¶¶ 89-92. The co-branded JACO shorts were popular—Hybrid could not keep the shorts in stock because JACO could not manufacture and fulfill orders fast

enough. Ex. 5 at ¶ 86; Ex. 7 at ¶ 86; Ex. 8 at ¶ 86.

On March 2, 2012, Paulson met Orlando face-to-face for the first time at a fitness competition to try to sign Orlando to JACO as a strategic partner. Ex. 5 at ¶ 97; Ex. 7 at ¶ 97; Ex. 8 at ¶ 97. Soon afterwards, on March 16, 2012, Wilson—a mentor to Paulson— was fired from JACO. Ex. 5 at ¶ 99; Ex. 7 at ¶ 99; Ex. 8 at ¶ 99.

Mere days after Wilson's firing, he allegedly created the Hylete brand, which initially comprised an 'H' logo (⊖) and a shortened version of the words "hybrid" and "athlete" (i.e., "Hylete"). Ex. 5 at ¶¶ 99-100, 106, and Exhibit D thereto, page 2; Ex. 7 at ¶¶ 99-100, 106; Ex. 8 at  ¶¶ 99-100, 106. Wilson designed Hylete's confusingly similar logo (⊖) and name ("Hylete") as a result of seeing Hybrid's logo (⊖), name ("Hybrid Athletics"), and business success, reputation and goodwill while Wilson worked at JACO, and Hylete sought to trade off the same.  *See* Ex. 5 at ¶¶ 83-86, 95-100, 117-123, and Exhibits E & F thereto; Ex. 7 at ¶¶ 83-86, 95-100, 117-123; Ex. 8 at ¶¶ 83-86, 95-100, 117-123. Even the font Wilson chose for the name "Hylete" was the exact same as Hybrid's: Eurostile. Ex. 5 at Exhibit D thereto, pages 3, 5. Hylete filed a trademark application for the ⊖ logo on January 30, 2013. Ex. 5 at ¶ 53; Ex. 7 at ¶ 53; Ex. 8 at ¶ 53.

Soon after Wilson's firing, Paulson left JACO to join Hylete. Ex. 5 at ¶ 103; Ex. 7 at ¶ 103; Ex. 8 at ¶ 103. Paulson again contacted Orlando trying to sign him as a strategic partner, this time for Hylete. *See* Ex. 5 at ¶ 104; Ex. 7 at ¶ 104; Ex. 8 at ¶ 104. However, Orlando refused to work with Paulson, Wilson, or Hylete, in any capacity, after he discovered their willful infringement and copying of Hybrid's Marks. Orlando first saw Hylete's name and ⊖ logo in April 2012 when Paulson sent Orlando a marketing packet. Ex. 5 at ¶ 105; Exs. 10 and 58.[2] Orlando immediately wrote Paulson noting the confusing similarities. Ex. 5 at ¶ 106 and Exhibit D thereto, page 8; Ex. 7 at ¶ 106; Ex. 8 at ¶ 106. Paulson acknowledged Orlando's concerns. Ex. 5 at Exhibit D thereto, pages 2-3.

---

[2] Exhibits with exhibit stickers identifying Opposition No. 91213057 are publicly available on the Trademark Trial and Appeal Board Inquiry System (https://ttabvue.uspto.gov/ttabvue/v?pno=91213057&pty=OPP).

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE
41461666v3

Since that time, the confusing similarity between Hylete's and Hybrid's brands has led to innumerable instances of consumer confusion in the marketplace. For example, Orlando summarized his general experiences of confusion as follows:

> I'm at the [CrossFit] games. I'm at the [CrossFit] regionals. I'm at a vendor booth. I'm walking through an airport and somebody walks up to me and says, "hey, dude, I just picked up your new shirt," and they have got the Hylete shirt on . . . [t]he angle that I've taken consistently is just quietly, quietly explain the situation in a way that doesn't tear apart anyone's business. . . . [T]his stuff happens everyday.

Ex. 9 (R. Orlando Sep. 3, 2015 Depo. Tr.) at 124:22-125:25. Many of these instances of confusion have been recorded in documents and testimony.

For instance, on March 10, 2013, a man named Jesse Clay wrote Orlando on Facebook saying Orlando "should investigate HYLETE…unless they r [sic] a branch of Hybrid they chicken hawked your logo…heads up." Ex. 11. On March 11, 2013, Paulson responded to Orlando's forward of Jesse Clay's message and even admitted that Hylete was experiencing consumer confusion. Ex. 12. That same day, Orlando corresponded with a man named Glenn Robinson ("Robinson") about Paulson's response. Ex. 13. Robinson and Wilson had been embattled in litigation after Wilson left JACO. Ex. 14.

Orlando was outraged that Hylete knocked off Hybrid's brand and privately told Robinson, who he knew personally and had worked with at JACO, he ▉▉▉Redacted▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Ex. 13 at 2 ("**Asserted Statement #1**"); *cf.* Hylete Compl. ¶ 21. Robinson put Orlando ▉Redacted▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Ex. 13 at 1.

A few months later in May 2013, CrossFit held a Regional event in Canton, Massachusetts at which Hylete was an exhibitor. At the Regional event, Dale Saran, former General Counsel of CrossFit, saw Hylete's booth next to Hybrid's and was instantly confused as to an association between Hylete and Hybrid. He approached Mr. Orlando and inquired whether Hylete was Hybrid's new partner. *See* Ex. 15 (D. Saran Aug. 4, 2015 Depo. Tr.) at 67:8-68 :19. Dave Castro, Director of the CrossFit Games, saw Hylete's booth at another CrossFit regional that year and asked a Hylete

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

41461666v3

representative, "Oh, [Orlando's] selling here, is he here?" Ex. 16 (D. Castro Sep. 9, 2015 Depo. Tr.) at 38:2-39:10. According to Mr. Castro, Hylete's ⊕ logo "looked exactly like" Hybrid's trademark with "a few tweaks." *Id.* He thought Hybrid had expanded its clothing line and that Hylete was Orlando's brand. *Id.* As explained below, Castro's testimony was later confirmed by Hylete's own employee, Jennifer Null. Ex. 33 (J. Null Oct. 28, 2015 Depo. Tr.) at 38:16-39:7.

B. <u>Consumer Confusion Compels Orlando's Response</u>

The constant consumer confusion caused by Hylete's ⊕logo necessitated corrective responses from Orlando. For instance, in response to Jesse Clay, Orlando responded that he was "well aware of" Hylete and that the "[b]est way to fight this kind of thing is to boycott their product." Ex. 11 ("**Asserted Statement #2**"); *cf.* Hylete Compl. ¶¶ 23, 27-28. Orlando testified as follows:

> Q.   Have you ever told anyone not to buy Hylete brand apparel?
> A.   Yes, online. I believe there was a Facebook post that came in, somebody sent me a message and they were -- they said, hey, these logos are similar, you know, and I think I responded back something like, you know, the best thing you can do in this situation is not support them and buy their gear.

Ex. 17 (R. Orlando Mar. 20, 2019 Depo. Tr.) at 27:2-10. Orlando always strived to be fair and balanced in correcting confusion:

> Q.   Apart from that incident, have you ever said anything -- have you ever told anyone not to buy Hylete gear?
> A.   No, quite the contrary actually. One of the instances of confusion that I had was with Jay Layden, and one of the conversations that I had with him when I walked into his gym and I saw all the gear in there, and we had a very straightforward conversation about Hylete, because he just thought that he was buying my gear. I actually said to him, look, if they give you great prices -- they make good stuff -- if they give you great prices, you do what you gotta do. So that was a conversation that I had with Jay.
>
> . . .
>
> Q.   You don't want to destroy [Hylete's] business?
> A.   No. Like I said, I've had conversations with people and I've told, you

know, one person, the best way to boycott this is not to buy their product, and the best way to fight this is to not buy their product. But I've also told people, hey, if you're a gym owner, because I understand this from the perspective of a small business owner, somebody who is trying – you're trying to put things together, you're trying to put some revenue on the table, that if you can buy gear and you get a great deal from Hylete and you're going to put your logo on it and you're going to sell it to your members and they give you the best deal, then you gotta do what you gotta do as a business. So I don't begrudge a small business owner trying their best to [w]ring out a little bit of profit from their business.

. . .

Q.   When was the last time you had a conversation with a consumer telling them something similar to the best way to deal with this type of thing is to not buy their product?

A.   The last time was sometime in the last year when, like I think I mentioned it earlier, there's a woman that comes in with Hylete gear, and I mentioned to her that, you know, they're not me, that's not my brand, it's not my logo, and she was immediately mad and pissed. And I said, well, then don't buy their stuff anymore. That's about how casual it is, and I don't go into some long diatribe about, you know, who they are and what's going on. I don't -- I don't divulge that stuff because it's -- I don't want to make her uncomfortable, and I don't want to make the situation even worse.

Ex. 17 at 27:13-28:1, 188:14-189:5, and 191:2-18; *cf* Hylete Compl. ¶¶ 23, 27-28.

Moreover, Orlando did not instruct Hybrid's employees to speak poorly of Hylete, but conversations with consumers were necessitated by the constant confusion. Ian Jentgen, former head trainer of Hybrid Athletics, testified as follows:

Q.   Did Mr. Orlando ever tell you what to say to people if they asked you about Hylete?

A.   He didn't instruct me or give me direct -- you know, a canned response.

. . .

Q.   Did [Orlando] ever tell you to tell people to boycott Hylete?

A.   Again, I don't think he specifically told me to boycott Hylete, but -- he could have said, boycott Hylete, but it in many ways went without saying, that that was the position.

Q.   Yeah, again, I'm not asking the specific words. I understand it's hard to remember exactly what somebody said --

A.   I think it was implied. Is that fair?

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE                              19cv02494
41461666v3

. . .

Q.   Again, I don't need a specific date. I'm just generally -- what year or month [was it implied], if you remember?

A.   I think it was predicated on instances of confusion. So when there was an instance of confusion, that's when it would be brought up. So if I look back to the CrossFit regionals, that was potentially when it was first brought up.

Ex. 18 (I. Jentgen Apr. 3, 2019 Depo. Tr.) at 104:9-12, 105:5-14, and 105:18-106:2; *cf.* Hylete Compl. ¶¶ 23, 27-28.

C.   CrossFit, Inc. Bans Hylete from CrossFit Events ████████ Redacted ████

████████

Because Hylete and Hybrid were each selling goods at CrossFit events, Hylete's intentional use of marks that are confusingly similar to Hybrid's Marks necessarily involved CrossFit, Inc. ("CrossFit"). Orlando at the time was a Strongman Subject Matter Expert for CrossFit and conducted seminars on behalf of CrossFit as an ambassador of CrossFit's fitness regimens. Ex. 6 at ¶¶ 23-24. After CrossFit held a Regional event in Canton, Massachusetts, ████████████ Redacted ████████████ ████████████████████████████. Ex. 12. ███████ Redacted ██████ ████████████████████████████████████████ ████████████████████████████████. Ex. 19.

As a result, on June 12, 2013, counsel for Hylete sent a letter to CrossFit's then-General Counsel, Saran. Ex. 20. Hylete's letter provided that ███ Redacted ████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ███████████████████ *Id.* On June 23, 2013, Saran responded to Hylete's counsel as follows:

████████████████ Redacted ████████████ ████████████████████████████

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE
41461666v3

Redacted

Redacted

. . .

Redacted

Ex. 21 ("**Asserted Statement #3**").

Still further, CrossFit' corporate representative, Dave Castro, testified in the CT

Action that                              Redacted

Ex. 22 (D. Castro Dec. 20, 2019 30(b)(6) Depo. Tr.) at 195:25-196:12. Redacted

*Id*. at 196:14-23.

Saran has also testified that it was he who banned Hylete and he did so:

Redacted

Ex. 53 (D. Saran Jan. 8, 2020 Depo. Tr.) at 74:15-75:3.

After Saran sent his letter to Hylete, Orlando privately forwarded the text of

Saran's letter to Robinson because Robinson was aware of Hylete's infringement and theft of Hybrid's brand and trademarks. *See* Ex. 24; Ex. 17 at 129:13-18. Orlando stated to Robinson "I told you I would crush those idiots." Ex. 24 ("**Asserted Statement #4**"); *cf.* Hylete's Compl. ¶¶ 21, 24. Orlando further testified that he was pleased about Hylete's ban as it was a fair result for a willful infringer:

> Q.   So if I understand your testimony correctly, it wasn't your goal to destroy [Hylete's] business, but you are happy that this happened, that CrossFit banned them; correct?
> A.   It made me happy to see them suffer and be uncomfortable.

Ex. 17 at 201:19-25. Mr. Orlando elaborated:

> A.   To me, this -- this email was like, it felt like they were -- Hylete was making an appeal to CrossFit and CrossFit, the games, had my back and said, no, no, we're not going to let you be here. That felt good.

Ex. 17 at 203:16-23; *cf.* Hylete's Compl. ¶¶ 21, 24.

   D.   Rampant Confusion Continues Between Hylete and Hybrid

Even after Hylete was banned from CrossFit events, Hybrid continued to experience consumer confusion in the marketplace. On July 28, 2013, a man named Yusuke Aonuma emailed Orlando that he "see[s] a lot of people wearing Hylete clothing and postings on Facebook. Does it have anything to do with Hybrid Athletics? The logo looks a lot like Hybrid and the name is very similar so was just wondering." Ex. 25. In September 2013, Matt Tuthill, former Deputy Editor of Muscle and Fitness, saw Hylete's 2013 Mr. Olympia Competition booth and thought "Rob Orlando had gotten himself a booth . . . [and] . . . took a screen grab and sent it to him, and then I said have you licensed out the Hybrid Athletics logo. You know, I was curious if he had entered into some kind of distribution deal." Ex. 26 (M. Tuthill Aug. 5, 2015 Depo. Tr.) at 26:24-27:10. In or around October 2013, a woman named Miki Carey, a gym owner and an athletic apparel consumer, thought (1) "Hylete" "sounded the same" as "Hybrid Athletics,"  (2) the companies were "one and the same,"  and (3) "there was some sort of affiliation[] with the companies" because of the "similar names." Ex. 27 (M. Carey Dec.

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

3, 2018 Depo. Tr.) at 49:24-50:3 and 157:10-14. In anticipation of Mr. Orlando coming to do a seminar at her gym, the gym bought "a bunch" of Hylete shirts. *Id.* at 35:17-36:7. She was "very excited to show [Orlando] that . . . [she] had something that had his logo on there. *Id.* Ms. Carey testified that leading up to that time she was confused she had been visiting Hybrid's gym website a "couple [of] times a week" to see workouts posted by Hybrid. *Id.* at 170:12-16. Ms. Carey testified Orlando did not say anything negative about Hylete and did not tell her not to purchase Hylete products. *Id.* at 76:16-24.

E. Hybrid Opposes Hylete's Trademark Application for ☿ on the Basis of a Likelihood of Confusion

In direct response to ongoing consumer confusion in the marketplace caused by Hylete's use of confusingly similar marks, Hybrid initiated a TTAB opposition proceeding against Hylete's trademark application for its ☿ logo in October 2013. Ex. 2.

Hybrid continued to obtain additional evidence and testimony of confusion while the TTAB proceeding was pending. On December 5, 2013, man named Drake Rodriguez messaged Orlando on Facebook and asked "[h]ow do [you] feel about Hylete athletics[] basically copying your logo and name?" Ex. 28. On December 24, 2013, a man named Syncere Martinez emailed Orlando and told him "something has to be done with Hylete! It's a blatant rip off of the Hybrid Athletics brand! . . . [T]he "H" and the term Hybrid Athlete is something you have created in the CrossFit Community." Ex. 29. On January 23, 2014, a man named Eric Lester messaged Orlando on Facebook and asked "[i]s 'Hylete' associated with Hybrid Athletics? Their name and logo is more than a little similar but I can't find anything on their site to indicate it." Ex. 30. Orlando responded "absolutely not. They have nothing to do with Hybrid Athletics." *Id.* ("**Asserted Statement #5**"). On February 26, 2014, a man named Zach Even-Esh emailed Orlando and stated that he "chatted with a Hylete rep in Miami and thought they were your apparel line. I know I saw you were working with them before my man but just checking in to see if this is legit." Ex. 31.

Hybrid also obtained additional trial testimony of consumer confusion at the

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE
41461666v3

TTAB: Jason Leydon, owner of CrossFit Milford in Connecticut, ordered shorts from Hylete co-branded with his gym's logo. When he received them, he thought "it look[ed] a lot like the Hybrid H. There was confusion. . . . I thought that Rob had some sort of role in it because the H's are similar . . . When my wife saw the shorts when we first got them, again she thought Rob had took on some sort of clothing line because the H's were very similar." Ex. 32 (J. Leydon Sep. 4, 2015 Depo. Tr.) at 23:3-14.

Jennifer Null, former Director of Sales at Hylete (and now an independent third party), corroborated Mr. Castro's confusion at a 2013 CrossFit Regional event, testifying that Dave Castro was "having this conversation with this kid Keith. And so as soon as he walked away, I went up to Keith and said, 'What did he say to you?' He said, 'He asked if we had an affiliation with Rob Orlando.' . . . I went right up to Dave and said, 'Dave, just so you know, we have nothing to do with Rob Orlando.'" Ex. 33 at 38:21-39:6.

Ian Jentgen also testified he saw the Hylete logo for the first time and asked Orlando "what's going on here? It's like exactly us. Like are you involved with them?" Ex. 34 (I. Jentgen Jul. 29, 2015 Depo. Tr.) at 91:18-20. Jentgen stated, "I was confused. I thought [Orlando] would have had some relationship with them . . . and we saw people who were confused throughout the weekend as to what was going on." *Id.* at 91:24-95:6.

On September 11, 2015, Orlando again privately responded to an email from Robinson about JACO "making a comeback." Ex. 35 at 1. Orlando privately remarked that he was "kicking the shit out of Hylete." *Id.* ("**Asserted Statement #6**"); *cf.* Hylete's Compl. ¶ 21. At this point in the opposition, Hybrid had successfully (1) moved to compel discovery from Hylete, Ex. 36, (2) obtained an order for sanctions against Hylete, Ex. 37, and (3) obtained substantial testimony of actual confusion, including testimony of actual confusion that was corroborated by Hylete's own witness (as shown above).

In March 2016, the opposition proceeded to a full trial before the TTAB. *See* Ex. 38. Hybrid's TTAB Trial Brief detailed Hylete's willful infringement and copying and relied on many of the documented communications above. *Id.*; *see also* Ex. 6 at ¶ 49 (filed on summary judgment). On December 15, 2016, Hybrid's opposition was

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

sustained. Ex. 3 at 22. Specifically, the TTAB determined Hybrid's common law rights in its ⬛logo and that there was a likelihood of confusion between Hybrid's logo and Hylete's logo based in part on significant evidence of actual confusion. *Id.* at 17-22. Hylete unsuccessfully sought reconsideration, which the Board denied on October 18, 2017. Ex. 39. Hylete's failure at reconsideration led Hylete to appeal the TTAB's determination to the Federal Circuit.

F. ███████████████ Redacted ████████████████

During the TTAB Opposition, Hylete was fundraising its infringing brand on CircleUp. In August 2015, a woman named ███████ Redacted ██████████ ████████████████████████████. On August 3, ██████ Redacted ██████ ███████████████████████. Ex. 40. ████████ Redacted ████████ ███████████ *Id.* On August 6, 2015, ███████ Redacted ███████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. 41. However, ███Redacted██ ████████████████████████████████████████████████████ ████████████████████████████████ *Id.* (collectively, "**Asserted Statement #7**"). ████ Redacted ████ ████████████████████████████████████████████████████ ████████████████████. *Id.* ████ Redacted ████ ████████████████████████████████████████ *id.*, which was in fact the eventual result of the TTAB opposition proceeding. Both Orlando and Saran later testified that Orlando did not ask ███████ Redacted ███████ and did not have any input in these emails. Ex. 17 at 194:5-195:23; 105:17-106:15 (testifying as to Exs. 40 and 41). ████████████████ Redacted ████████████████ █████████████. Ex. 23:88:10-89:2.

G. Hybrid Files District Court Action for Willful Trademark Infringement and Uncovers Additional Confusion Evidence

On October 23, 2017, Hybrid filed an action for, *inter alia*, willful infringement

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE
41461666v3

and copying against Hylete in the United States District of Connecticut. Ex. 5. Related to Hybrid's allegations, Orlando testified he thinks Hylete stole Hybrid's Marks and has told people that Hylete is a willful infringer:

> Q.    You think Matt stole your logo; right?
> A.    I think Hylete stole my logo.
> Q.    You don't think Matt did it himself?
> A.    I think he was part of it.
> Q.    What do you think he did?
> A.    I think he took the H and then took Hybrid Athletics and smashed those two
>        words together to create Hylete, added some tweaks to the H
>                                           . . .
> Q.    Did you ever tell anyone that Hylete copied your marks?
> A.    I don't know if I used the word "copied" or if I used the word "stole," but
>        yeah, I've told people that.
> Q.    When is the last time you can remember when you told someone that Hylete
>        stole your mark?
> A.    One of – it's just one of those conversations at the gym, but I don't
>        remember whether it's last six months or twelve months or three months.
>        They are all kind of generic.

Ex. 17 at 104:16-23 and 191:19-192:5.

On July 27, 2018, Hybrid moved to amend its complaint to add Wilson and Paulson personally in view of newly-discovered evidence that specifically rebutted Wilson and Paulson's sworn testimony that Wilson had never seen the Hybrid marks before designing the Hylete marks. *See* Ex. 42 at 29. Hybrid received this email evidence from Robinson, which showed that Paulson had emailed Wilson a video showing Hybrid's ♆ trademark while Wilson worked at JACO and requested that Wilson post the video to JACO's Facebook. Hybrid's Motion to Amend was granted. Ex. 43.

After receiving this information, Hybrid deposed a former acting President of JACO, Karen Gough, who was copied on Paulson's email to Wilson. Ex. 42 at 29. Ms. Gough confirmed that at the time Paulson emailed Wilson, Wilson "was the only person who had the passwords and the ability to post on JACO's Facebook." Ex. 57 at 35:9-11. Ms. Gough further testified that Wilson knew of Orlando, and saw Hybrid's logo while at JACO based on the videos that were posted on Facebook, which have the logo present.

Gough testified the videos "were posted on Facebook by Mr. Wilson." *Id.* at 47:24-52:4-15; *see also id.* at 60:5-8; *id.* at 92:25-93:14.

While Hylete's answer to Hybrid's Amended Complaint included counterclaims against Hybrid, Hylete did not bring a fraud claim against Hybrid's 👕 trademark. Ex. 44. On May 10, 2019, Hylete sought to amend its complaint to add, *inter alia*, a fraud claim against Hybrid's 👕 trademark and tort claims against Orlando. Ex. 45. Hybrid successfully opposed many of the new claims.

Meanwhile during the CT Action, Hybrid obtained additional testimony regarding actual confusion. Ms. Null testified again in the District Court proceeding, this time adding that people would ask her about Hylete, saying, "Oh, this is Rob Orlando's brand, right?" Ex. 46 (J. Null Oct. 25, 2018 Depo. Tr.) at 51:15-16 and 53:5-6. She further testified regarding an instance where a person had a Hybrid t-shirt and called it a Hylete t-shirt and another instance where a consumer tried to return a Hybrid shirt to Hylete. *Id.* at 56:18-24 and 142:25-143:23.

In May 2019, Hybrid once again experienced additional confusion exhibited by a social media influencer named Ryan Fischer, who is a CrossFit gym owner and author who produces, hosts, and disseminates a podcast, "Real Chalk." Hylete sponsored three episodes of Mr. Fischer's podcast that aired in May 2019 (Real Chalk Episodes 74, 75, and 76). In promoting Hylete and its goods, Mr. Fischer was confused between Hylete's and Hybrid's brands and during Hylete's paid promotions on his podcast stated multiple times that Robert Orlando started and owns Hylete. Ex. 47 (R. Fischer Jul. 1, 2019 Depo. Tr.) at 46:10-12, 53:20-24, and Exhibits 414 and 419 thereto.

Mr. Fischer testified: "I genuinely thought that Hylete and Hybrid were like -- at that moment I didn't know the difference . . . Like, I had heard -- I had heard of Hylete before and I'd heard of Hybrid before, and like when I heard one over the other, I just never -- I never thought of them as two separate things." *Id.* at 47:7-15. When asked why Mr. Fischer thought Hylete and Hybrid were the same, he said "[t]hey sound the same. The logo is pretty similar. They're both in the CrossFit space." *Id.* at 48:16-17.

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

H. Hylete Threatens Orlando with a New Lawsuit After Losing its Federal Circuit Appeal, its Motion to Amend in the CT Action, and its Requested *En Banc* Review of Federal Circuit Appeal

On August 1, 2019, the Federal Circuit unanimously affirmed the TTAB's determination of a likelihood of confusion. Ex. 4.

On August 30, 2019, the CT Court partially denied Hylete's request for leave to amend. Ex. 48. Specifically, the CT Court denied Hylete leave to add a fraud claim against Hybrid's ⬡ trademark because it would "be unfairly prejudicial to Hybrid . . . at this advanced stage of litigation." Ex. 48 at 24. The Court also denied Hylete leave to bring claims against Orlando because the claims were "not responsive to the new allegations in the Amended Complaint, would expand dramatically the scope of this litigation, and are likely to require a new period of discovery concerning the alleged statements of Hybrid and Mr. Orlando" resulting in "undue prejudice to Hybrid." Ex. 48 at 29-30.

On September 6, 2019, Hylete moved for reconsideration regarding the Court's denial of its amendment to allege fraud. Ex. 49. Hylete's request was denied. Ex. 50.

On November 19, 2019, the Federal Circuit denied *en banc* Hylete's Request for Rehearing or Rehearing *en banc*. Ex. 51.

On November 21, 2019, Wilson emailed Orlando and told him Hylete has "been green lighted to sue you separately as Hybrid and you personally." Ex. 1. Wilson told Orlando he would "relish in [Orlando] losing everything [he] own[s]" through litigation that will "decimate" Orlando and his family. Ex. 1.

On December 30, 2019, Hylete filed the present lawsuit against Hybrid and Orlando in the Southern District of California.

III. **Hylete's Counts 4-6 Must Be Stricken**

A. Legal Standard of California's Anti-SLAPP Statute

Hylete's lawsuit is not grounded in any legitimate claims, but rather is brought to intimidate and harass Hybrid and Orlando. The anti-SLAPP statute, Cal. Code Civ. P.

§425.16 et seq., enables a party to file a "special motion to strike" on any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech." Cal. Code Civ. P. § 425.16(b)(1). Although the Anti-SLAPP statute is a creature of California state law, Federal Courts apply the anti-SLAPP statute to state law claims when exercising supplemental jurisdiction or sitting in diversity. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2 (9th Cir. 2010) .

Courts apply a two-step inquiry to determine whether a plaintiff's claims must be stricken under the anti-SLAPP statute. *First*, a court determines whether the movant has made a *prima facie* showing that the anti-SLAPP statute applies because the lawsuit "arises from an act in furtherance of defendant's right of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010).

*Second*, if a defendant makes that threshold showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Mindys*, 611 F.3d at 595. To survive this step, the non-movant must "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the [non-movant] is credited." *Hilton*, 599 F.3d at 903 (citations omitted). "[I]f the plaintiff cannot show a probability of prevailing on a claim, the claim is stricken." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013).

B.  Counts 4-6 Arise Directly Out of Defendants' Litigation Conduct

The Asserted Statements allegedly made by Hybrid and/or Orlando were made immediately prior to or during the TTAB proceeding to cease consumer confusion or to further Hybrid's claims. Acts taken in furtherance of the right of petition are defined by statute to include:

> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Hilton* 599 F.3d at 903 (9th Cir. 2010).

---

17

19cv02494

If a communication "concern[s] the subject of the dispute" and is made "in anticipation of litigation," it falls within section 426.16(e). *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. 11-cv-2243-CW, 2012 WL 3877783, at *11-12 (N.D. Cal. Sept. 6, 2012). Courts adopt an expansive view of what constitutes litigation-related activities, as the Anti-SLAPP law is to be "construed broadly." *Hilton*, 580 F.3d at 882-83, 903. Even where a *non-attorney* supports litigation-related activity, Courts will strike the claims. *See Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 12-13 (1995) (Anti-SLAPP law applies to both those who "formally fil[e] a lawsuit" and those "who support[ed] and encourag[ed] the filing of a lawsuit").

In *Shire City Herbals, Inc. v. Blue*, defendants believed plaintiff's trademark FIRE CIDER was generic, and therefore, invalid. No. 15-30069-MGM, 2016 WL 2757366 (D. Mass. May 12, 2016) (analyzing Massachusetts' Anti-SLAPP statute (M.G.L. 231 § 59H), which is narrower than California's Anti-SLAPP statute). As a result, defendants created blog posts and a petition with over 11,000 signatures, organized a boycott of plaintiff's product, created a website and various Facebook pages that were promoted to approximately 10,000 individuals to cease using plaintiff's product, and incited others to contact plaintiff's retail accounts via letters, phone calls, and personal visits to demand plaintiff's products be removed from their shelves. *Id.* at *1-*3. Plaintiff alleged that it lost existing and prospective business as a result of defendants' actions and sued defendants for trade disparagement in violation of the Lanham Act, unfair trade practices, tortious interference with contractual relations, tortious interference with prospective business relations, and trade libel. *Id*.

Defendants filed a special motion to dismiss under Massachusetts' anti-SLAPP law. The Court granted defendants' motion, holding that defendants' actions were protected by their constitutional right of petition. *Id*. at *4-*7. The Court further held that although defendants may have obtained commercial benefits from their actions, "commercial motivations…[are] irrelevant…[because] [a]ctions can have economic or commercial motives, or even be based entirely on economic self-interest, and still qualify

as petitioning activities." *Id*. at \*5 (citations and internal quotations omitted).

The *Shire City Herbals* case is instructive here. The Asserted Statements made by Hybrid were made to resolve consumer confusion due to Hylete's willful infringement. Hybrid's Asserted Statements also directly led to and resulted in Hybrid filing the TTAB administrative proceeding against Hylete in October 2013 or were made pursuant to that proceeding. As explained above, Hylete was formed in April 2012, and Orlando has been battling consumer confusion ever since. Hybrid's two public Asserted Statements posted on Facebook were made in response to this consumer confusion, and have been used as evidence in the TTAB and CT Action. *See Mindys*, 611 F.3d at 597 (applying the Anti-SLAPP law to filings with the USPTO.). Orlando's two public statements – which have been proven true by the TTAB's finding of likelihood of confusion – are *de minimus*. Indeed, Orlando's two limited comments in the face of actual confusion cannot be compared to the outright campaign of *Shire*, which was still found to be protected under Massachusetts' Anti-SLAPP statute.

Moreover, Orlando's three private statements to Robinson are unactionable and were in furtherance of his rights of petition. As a trusted friend and advisor, it was Robinson who first referred Orlando to an attorney for counsel regarding Hylete's infringement. Further, Robinson was not a potential investor or customer of Hylete – he was averse to Wilson in a litigation following Wilson's termination with JACO. Ex. 14. Accordingly, the statements to Robinson are not actionable.

Finally, the two Asserted Statements made by a CrossFit employee have not been shown to have been directed, controlled, solicited, or even influenced by Hybrid. Hylete has taken multiple depositions of Hybrid (Orlando), CrossFit, and Saran in the TTAB and CT Action, yet has never shown any involvement of Orlando in these Asserted Statements. In fact, the testimony obtained proves Orlando was not involved. Accordingly, they cannot be attributed to Hybrid or Orlando.

C. Hylete Has No Reasonable Probability of Success on the Merits

Hylete cannot survive the second step of the anti-SLAPP analysis because Hylete

---

19

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

41461666v3

cannot show a reasonable probability of success on the merits. "[A movant's] anti-SLAPP motion should be granted when a [non-movant] presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff." *Metabolife Int'l, Inc. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (citations and quotations omitted).

Hylete cannot make the requisite showing here, as explained above. As an initial matter, Hylete cannot show any false statement of fact as all Asserted Statements are non-actionable opinion. *See, e.g., Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 904-05 (9th Cir. 2007) (finding statement regarding opponent's lack of trademark rights to be "at worst . . . an erroneous legal opinion" and not a false statement of fact because to date "there ha[d] been no formal determination" as to the opponent's trademark rights). Moreover, the only statements at issue are those directly related to Hybrid's TTAB Opposition and thus are not actionable. Hybrid's TTAB Trial Brief used, *inter alia*, the Asserted Statements to evidence Hylete's willful infringement and copying. Exs. 38; *see also* Ex. 6 at ¶ 49 (filed on summary judgment). After multiple depositions of Orlando, Saran, Castro, and Jentgen, Hylete still cannot identify a single false statement by Orlando. The Asserted Statements have already proven to be true—Hylete's logo is improper and confusingly similar to Hybrid's. After a full trial, the TTAB held there was a likelihood of confusion between Hybrid's logo and Hylete's logo, and the Federal Circuit affirmed. Ex. 3. The ongoing CT Action will further prove Hylete's willful infringement and copying, using the Asserted Statements as evidence. Hylete's claims were filed solely to retaliate against Hybrid for successfully seeking to protect and enforce its registered and established trademark rights against Hylete and its founders for their willful and intentional infringement. For these reasons, combined with the reasons below in Section IV, the Court should strike Hylete's pleading.

D. Litigation Privilege Bars Any Probability of Success

Counts 4-6 are barred by litigation privilege. "The litigation privilege is relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

plaintiff must overcome to demonstrate a probability of prevailing." *Contreras v. Dowling*, 5 Cal. App. 5th 394, 415 (2016) (citations omitted). California's litigation privilege, which has been codified at California Civil Code § 47(b), "applies to any communication (1) made in judicial or quasi-judicial proceedings;[3] (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006) (citations omitted). "The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud)[.]" *Grant & Eisenhofer, P.A. v. Brown*, No. 17-cv-5968-PSG, 2017 WL 6343506, at *5 (C.D. Cal. Dec. 6, 2017). In fact, anti-SLAPP motions targeting litigation activity are routinely granted based on this privilege. *See, e.g.*, *Kulkarni v. Upasani*, 659 F. App'x 937, 940 (9th Cir. 2016) (affirming Anti-SLAPP dismissal of various claims— including defamation and intentional infliction of emotional distress—based on litigation privilege); *Blaha v. Rightscorp, Inc.*, No. 14-cv-9032-DSF, 2015 WL 4776888, at *3 (C.D. Cal. May 8, 2015) (granting Anti-SLAPP motion based on litigation privilege).

Further, "[i]t is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Rusheen*, 37 Cal. 4th at 1057 (citations omitted). "'It is also well settled that the absolute privilege in both judicial and quasi-judicial proceedings extends to preliminary conversations and interviews between a prospective witness and an attorney if they are some way related to or connected with a pending or contemplated action." *Pettit v. Levy*, 28 Cal.App.3d 484 (1972); *see also Gallegos*, 158 Cal. App. 4th at 958.

Here, the statements complained of by Hylete are judicially privileged. As shown above, the Asserted Statements were made by Orlando leading up to or during the TTAB

---

[3] Judicial and quasi-judicial proceedings are defined broadly to include "'all kinds of truth-seeking proceedings,' including administrative, legislative and other official proceedings." *People ex rel. Gallegos v. Pac. Lumber Co.*, 158 Cal. App. 4th 950, 958 (Feb. 1, 2008) (internal quotations omitted).

proceeding and Federal Circuit affirmation, as well as the CT Action. The Asserted Statements were made to combat consumer confusion, seek legal advice, and request Hylete to cease its infringing trademark activities. Each of the statements were the object of the TTAB opposition and the CT Action. The Asserted Statements were used in Hybrid's TTAB trial brief to evidence consumer confusion and are currently being used in the CT Action to evidence Hybrid's willful infringement and copying. As a result, the Asserted Statements have "some connection or logical relation" to the TTAB and CT Action. Furthermore, the statements have already been held to be true by TTAB (affirmed by the Federal Circuit), and will further be held to be true in the CT Action.

Accordingly, these communications are privileged, and Counts 4-6 fail.

### E.  Defendants Are Entitled to Costs and Attorneys' Fees

A "prevailing defendant" on an anti-SLAPP motion "shall be entitled to recover his or her attorney fees and costs." Cal. Code Civ. P. § 425.16(c)(l); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). Defendants will file a motion establishing these amounts if this Motion is granted and fees awarded.

## IV.  All Counts in Hylete's Complaint Fail Per Rule 12(b)(6)

### A.  Counts 1 and 2 Fail to Allege Fraud

Both of the allegations Hylete relies on for its fraud claims are demonstrably false and do not meet the pleading standard. Hylete pleads that: (1) "[Hybrid] falsely declared . . . that the mark in the '469 Registration had been used on bottoms, headwear, and/or tops by December 31 2008" and (2) "[Hybrid] and/or [Hybrid]'s attorney also tried to conceal Blocking Registration No. 3656042 by making false statements to the USPTO." (Dkt. 1 at ¶¶ 81, 83 (Count 1), 91, 93 (Count 2).) Neither of these statements are true or could establish fraud.

*First,* Hybrid produced videos, blogs, and websites support use of its mark by its filed first use date of December 31, 2008 in the CT Action. *See* Exs. 3, 54-56. In addition, the TTAB found as fact that "[Hybrid] has demonstrated its first use . . . ***on clothing as***

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

***early as December 2008***." Ex. 3 at 9. *Second*, Hybrid has clearly showed use at least as early as 2008, Reg. No. 3656042 cannot be a "Blocking Registration." Hybrid's 2008 use predates the April 17, 2009 use for Reg. No. 3656042, leaving no question that Hybrid's 👕 mark is entitled to protection and no fraud occurred.  *Finally*, Hylete's accusations are legally impossible because an erroneous first use date can never be fraud. "[I]f the mark was in use in commerce as of the filing date [of the application], then the claimed date of first use, even if false, does not constitute fraud because the first use date is not material to the Office's decision to approve a mark for publication." *Hiraga v. Arena*, 90 U.S.P.Q.2d 1102 (T.T.A.B. 2009) (citations omitted); see 37 C.F.R. §2.83; TMEP § 1208.01. For the foregoing reasons,[4] Counts 1-2 must be dismissed.

B. Counts 1 and 2 are Barred by Defendant Preclusion

Counts 1 and 2 should be dismissed as a "collateral attack on [a] district court's judgment." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320 (Fed. Cir. 2008). Hylete was denied leave in the CT Action to bring Counts 1 and 2 as a single Count in the CT Action. Ex. 45 at Dkt. 180-2 at 46 ¶¶ 132, 134; Ex. 43. In view of an unfavorable decision, Hylete now subverts the CT Court by filing its claim again here, thereby wasting this Court's resources. Counts 1 and 2 are therefore a collateral attack on the CT Court's judgement. Therefore, these claims should be dismissed.

C. Counts 3-6 Fail to State a Claim

*1.  Counts 3-6 are Barred by Litigation Privilege*

For the same reasons discussed above with respect to Counts 4-6 in Section III.D, litigation privilege also bars the assertion of Counts 3-6.

*2.  Count 3 Fails to State a Claim*

Hylete's allegations of false advertising under the Lanham Act state mere legal

---

[4] To the extent Hylete plead that any knowledge of Hylete's mark forms the basis of fraud, a senior user (Hybrid) need not identify use by a junior user (Hylete) in a trademark application. *See Intellimedia Sports Inc. v. Intellimedia Corp.*, Canc. No. 24, 801, 1997 WL 398344, at *4 (T.T.A.B. May 20, 1997).

conclusions and are devoid of any factual allegations. There are five elements to a false advertising claim under Section 43(a) of the Lanham Act: "(1) the defendant made a false statement of fact about a product in a commercial advertisement, (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience, (3) the deception is material, (4) the defendant caused the false statement to enter interstate commerce, and (5) the plaintiff has been or is likely to be injured as a result of the false statement." *Appliance Recycling Centers of Am., Inc. v. JACO Envtl., Inc.*, 378 F. App'x 652, 654 (9th Cir. 2010). Hylete has failed to state a claim that is plausible on its face.

As explained above, Hylete has failed to show that any Asserted Statement was false or actionable. *See Freecycle*, 505 F.3d at 904-05. Rather, the Asserted Statements have already proven to be true by the TTAB in holding that Hylete's logo is confusingly similar to Hybrid's. These statements will also be held to be true in the CT Action. As a result, Hylete also did not allege or identify a single person that was actually deceived or had the tendency to be deceived by any of the Asserted Statements—because Hylete can't. Hylete further failed to allege any specific damage or injury, or any improper motive or malice concerning Mr. Orlando's discussion of infringement with consumers. Rather, the record supports that Hylete has created confusion in the marketplace, and it is Hybrid that has suffered from Hylete's actions.

Further, Hylete failed to show that any of the Asserted Statements were in a commercial advertisement. "[T]he touchstone of whether a defendant's actions may be considered commercial advertising or promotion under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market. Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, "businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action." *Fashion Boutique of Short Hills, Inc. v. Fendi USA Inc.*, 314 F.3d 48, 57 (2nd Cir. 2002); *see also Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) ("A handful of statements to

customers does not trigger protection from the Lanham Act."); *Maximum Availability Ltd. v. Vision Sols., Inc.*, No. 10-cv-1488-GW(RZX), 2011 WL 13176820, at *9 (C.D. Cal. Dec. 12, 2011) (finding no commercial advertising or promotion where the "[t]he only evidence in the record is of six customers or potential customers (in a U.S. market of 6,000 to 40,000, according to Plaintiff's own estimate) who actually received one or more of the [complained-of statements].". As shown above, not only are the Asserted Statements not actionable, "the statements that [Hylete] points to as defamatory or disparaging . . . are unmistakably isolated in nature. There is no proof of widespread dissemination, as is required to maintain a claim for false advertising under the Lanham Act." (*Id.*) (internal quotations omitted). Hylete has also failed to show any statement entered interstate commerce. Accordingly, Hylete has provided no proof the alleged statements were published in a commercial advertisement.

Therefore, Hylete's false advertising claim under the Lanham Act claim is deficient and should not be allowed to proceed.

### D. All Counts Are Barred by Statutes of Limitations or Laches

Hylete's claims are barred by statutes of limitations or laches. The statute of limitations for the fraud (Counts 1 and 2) and Connecticut unfair competition (Count 5) claim is three years, as is the analogous presumed laches period for the Lanham Act claim (Count 3). Cal. Code Civ. P. § 338(d); Conn.Gen.Stat. § 42-110(g). The California unfair competition claim (Count 4) is barred after four years and the tortious interference (Count 6) claim is barred after two years. Cal. Code Civ. P. §§ 17208, 339. All the statements complained of were made over four years ago. Accordingly, these claims are barred.

### V.   **Conclusion**

For the foregoing reasons, Counts 1-6 should be dismissed under Rule 12(b)(6), and/or Counts 4-6 should be stricken under Cal. Code Civ. P. § 425.16. Further, because any amendment would be futile, the Court should dismiss the Complaint with prejudice. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986).

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE

Dated: February 18, 2020                    Respectfully submitted,

                                            /s/ Justin Nahama, Esq.
                                            TROUTMAN SANDERS LLP
                                            Justin Nahama, Bar No. 281087
                                            justin.nahama@troutman.com
                                            Wynter L. Deagle, Bar No. 296501
                                            wynter.deagle@troutman.com
                                            Anne-Marie Dao, Bar No. 282632
                                            Anne-marie.dao@troutman.com
                                            11682 El Camino Real, Suite 400
                                            San Diego, CA  92130-2092
                                            Telephone:   858-509-6000
                                            Facsimile:   858-509-6040

                                            WHITMYER IP GROUP LLC
                                            Michael J. Kosma, *pro hac vice*
                                            Christopher J. Stankus, *pro hac forthcoming*
                                            Robert D. Keeler, *pro hac forthcoming*
                                            Benjamin N. Luehrs, *pro hac forthcoming*
                                            Whitmyer IP Group LLC
                                            600 Summer Street
                                            Stamford, CT  06901
                                            Telephone:  203-703-0800
                                            Facsimile:  203-703-0801
                                            Email: mkosma@whipgroup.com
                                                   cstankus@whipgroup.com
                                                   rkeeler@whipgroup.com
                                                   bluehrs@whipgroup.com
                                                   litigation@whipgroup.com

                                            *Attorneys for Defendants Hybrid Athletics, LLC
                                            and Robert Orlando*

DEFS.' MOT. TO DISMISS AND MOTION TO STRIKE                    19cv02494
41461666v3