UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYLETE, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>HYBRID ATHLETICS, LLC, a Connecticut limited liability company; and ROBERT ORLANDO, an individual,<br><br>                    Defendants. | Case No.:  3:19-cv-02494-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

The matters pending before the Court are the Motion to File Documents Under Seal filed by Defendants Hybrid Athletics, LLC and Robert Orlando (ECF No. 15); the Motion to Dismiss and the Motion to Strike filed by Defendants Hybrid Athletics, LLC and Robert Orlando (ECF No. 17); and the Motion to File Documents Under Seal filed by Plaintiff Hylete, Inc. (ECF No. 19).

## I. PROCEDURAL BACKGROUND

On December 30, 2019, Plaintiff Hylete, Inc. commenced this action by filing a Complaint against Defendants Hybrid Athletics, LLC ("HA") and Robert Orlando. (ECF No. 1). Plaintiff alleges that Defendants "embarked on a plan to destroy and/or disrupt

[Plaintiff]'s business and maliciously disparage [Plaintiff] to drive it from the marketplace." *Id.* at 6. Plaintiff alleges that Defendants

> unlawfully interfered with [Plaintiff]'s business by publishing false and misleading statements about [Plaintiff] and [Plaintiff]'s products, making false statements to [Plaintiff]'s customers and potential customers, interfering with [Plaintiff]'s business relationships and [Plaintiff]'s fundraising efforts, and fraudulently obtaining trademark registrations (including a registration for a mark [Defendant] Orlando admitted he copied from another entity and a mark that he admitted is descriptive and generic).

*Id.*

Plaintiff brings the following six causes of action: (1) fraudulent procurement of U.S. Trademark Registration No. 4,609,469 ("'469 Registration") against Defendant HA; (2) cancellation of the '469 Registration (fraud) against Defendant HA; (3) violation of Lanham Act 15 U.S.C. § 1125(a) (false advertising) against Defendants HA and Orlando; (4) violation of California Unfair Competition Law, Business and Professional Code § 17200 (unfair methods of competition and unfair/deceptive/unlawful acts or practices) against Defendants HA and Orlando; (5) violation of Connecticut Unfair Trade Practices Act (unfair methods of competition and unfair/deceptive acts or practices) against Defendants HA and Orlando; and (6) tortious interference with prospective economic advantage against Defendants HA and Orlando. *See id.* at 18-27. Plaintiff seeks injunctive relief, declaratory relief, lost profits, disgorgement of Defendants' profits, compensatory damages, treble damages, punitive and exemplary damages, costs, attorney's fees, and "other and further relief as the Court deems appropriate." *See* id. at 27-28.

On February 18, 2020, Defendants filed a Motion to File Documents Under Seal. (ECF No. 15). On the same day, Defendants filed a Motion to Dismiss all six of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Motion to Strike Plaintiff's fourth, fifth, and sixth claims pursuant to California's Anti-SLAPP Statute, Cal. Civ. Proc. Code § 425.16. (ECF No. 17). On March 9, 2020, Plaintiff filed a Motion to File Documents Under Seal. (ECF No. 19). On the same day, Plaintiff filed a Response

in opposition to Defendants' Motion to Dismiss and Motion to Strike. (ECF No. 21). On March 16, 2020, Defendants filed a Reply. (ECF No. 22).

## II. ALLEGATIONS OF THE COMPLAINT

Plaintiff "is a performance apparel company specializing in sales of apparel, footwear, gear, and accessories for individuals who are involved in active or 'fitness' lifestyles." (ECF No. 1 at 3-4). Defendant "Orlando is the sole owner and member of [Defendant] HA" and is "responsible for all aspects of [Defendant] HA's business and controls 100% of the business." *Id*. at 2.

Plaintiff "promotes, advertises, offers for sale and sells products to its consumers in the United States, including consumers who participate in functional fitness, cross-training and CrossFit" through "its HYLETE brand, and its registered trademarks" "as well as other marks which [Plaintiff] owns and uses (the 'Hylete Marks') …." *Id*. at 4 (emphasis in original). Plaintiff "has expended significant time and resources in building a successful brand with an excellent reputation and goodwill in the industry." *Id*. at 5. "As a result of [Plaintiff]'s efforts, [Plaintiff] and its product have become known in the industry for, among other things, high quality performance apparel and excellent customer service." *Id*.

After Plaintiff was formed in March 2012, Plaintiff "reached out to numerous microinfluencers to help build awareness for [Plaintiff]'s brand." *Id*. "One such microinfluencer was [Defendant] Orlando." *Id*. In April 2012, Plaintiff "sent [Defendant] Orlando mockups of the Hylete Logo Mark and Hylete Word Mark and asked [Defendant] Orlando if he would be interested in a co-promotion agreement." *Id*. Defendant "Orlando declined [Plaintiff]'s offer …." *Id*.

Defendant "Orlando accused [Plaintiff] of copying [Defendants'] marks." *Id*. Plaintiff "refuted [Defendant] Orlando's accusations and specifically explained to [Defendant] Orlando why the Hylete Marks were not confusingly similar to [Defendant] Orlando's or [Defendant] HA's marks, and that [Plaintiff] did not steal any marks from [Defendant] HA or [Defendant] Orlando." *Id*. "For years after this exchange, neither [Defendant] disputed [Plaintiff]'s representations." *Id*.

"When [Defendants] declined [Plaintiff]'s offer in … April 2012, [Defendant] Orlando's popularity in the CrossFit community was rapidly declining." *Id*. at 5-6. "Subsequent to [Defendants] declining [Plaintiff]'s offer …, [Plaintiff] started to become very successful." *Id*. at 6. "Upon realizing that he had missed out on a lucrative co-promotion opportunity with [Plaintiff] …, [Defendant] Orlando became angry." *Id*.

"So, [Defendants] embarked on a plan to destroy and/or disrupt [Plaintiff]'s business and maliciously disparage [Plaintiff] to drive it from the marketplace." *Id*. Defendant "Orlando indicated he wanted to 'crush those idiots,' 'kick[] the shit out of [Plaintiff],' and was 'happy' to see [Plaintiff] suffer." *Id*. (first alteration in original). Defendant "Orlando also indicated that he wanted to 'bury' [Plaintiff] and wanted to prevent [Plaintiff] from making 'a single sale in the [CrossFit Community].'" *Id*. (third alteration in original). Defendants

> unlawfully interfered with [Plaintiff]'s business by publishing false and misleading statements about [Plaintiff] and [Plaintiff]'s products, making false statements to [Plaintiff]'s customers and potential customers, interfering with [Plaintiff]'s business relationships and [Plaintiff]'s fundraising efforts, and fraudulently obtaining trademark registrations (including a registration for a mark [Defendant] Orlando admitted he copied from another entity and a mark that he admitted is descriptive and generic).

*Id*.

"For example, beginning in … 2013 and continuing to the present time, [Defendants] have told (and directed [Defendant] HA's employees to tell) [Plaintiff]'s customers and [Plaintiff]'s potential customers that [Plaintiff] stole and/or copied [Defendant] HA's trademarks, to boycott [Plaintiff] and to not buy [Plaintiff]'s products." *Id*. "Beginning in … 2013 and continuing for several years thereafter, [Defendants] posted statements on social media stating that [Plaintiff] stole and/or copied [Defendant] HA's trademarks, and directing readers to boycott [Plaintiff] and not buy [Plaintiff]'s products." *Id*. at 7. "Beginning in … 2013 and continuing until at least 2018, [Defendants] told (and directed [Defendants] HA's employees to tell) [Plaintiff]'s customers in Connecticut that [Plaintiff]

stole and/or copied [Defendant] HA's trademarks, to boycott [Plaintiff] and to not buy [Plaintiff]'s products." *Id*.

"During a CrossFit event in 2013, [Defendants] told CrossFit that [Plaintiff] stole and/or copied [Defendant] HA's trademarks and told CrossFit to ban [Plaintiff] from all CrossFit events." *Id*. at 6-7. "CrossFit subsequently banned [Plaintiff] from all CrossFit events." *Id*. at 7. Defendant "Orlando indicated that he was happy to see [Plaintiff] suffer as a result of [Plaintiff] being banned from CrossFit events and that it 'felt good.'" *Id*.

"On January 30, 2013, [Plaintiff] filed its application to register is [Hylete Logo] [M]ark … for use on … '[a]thletic apparel, namely, shirts, pants, shorts, jackets, footwear, hats and caps.'" *Id*. at 5. "On October 16, 2013, [Defendant] HA filed a Notice of Opposition to [Plaintiff]'s application." *Id*. Defendants "coordinated with CrossFit to oppose [Plaintiff]'s application to register [Plaintiff]'s Logo Mark based on [Defendant] HA's fraudulent 'H' logo trademark application." *Id*. at 7.

"In 2015, [Defendants] coordinated with CrossFit to interfere with [Plaintiff]'s fundraising efforts by falsely telling a potential [Plaintiff] investor that [Plaintiff] engaged in 'flagrant theft' of [Defendant] HA's trademarks." *Id*. "The potential investor did not ultimately invest in [Plaintiff]." *Id*. Defendant "Orlando and CrossFit made similar statements to other potential investors in [Plaintiff]." *Id*.

Defendants "have alleged that CrossFit is and was at all relevant times [Defendants'] attorneys." *Id*.

Defendants' "statements that [Plaintiff] stole and/or copied [Defendant] HA's trademarks were false, misleading and injurious." *Id*. First, Defendant HA "had no valid protectable trademark rights in the purported HA trademarks." *Id*.

> [Defendant] Orlando … conceded in a recent deposition that he copied the 'Hybrid' mark from someone else, that the purported HYBRID ATHLETICS mark merely described [Defendant] HA's services, that the purported HYBRID ATHLETICS mark is generic for [Defendant] HA's services, and that numerous third parties have used and are using the identical marks or similar marks and, that for over ten years, [Defendant] HA failed to police any such third party uses.

5

*Id*. at 7-8 (emphasis in original).

"Second, even if [Defendant] HA had any protectable rights in the purported HA trademarks, the statement that [Plaintiff] stole and/or copied [Defendant] HA's trademarks is false." *Id*. at 8. "[Plaintiff]'s principal Ron Wilson independently created the Hylete Word Mark and Hylete Logo Mark in good faith and did not steal or copy them from [Defendant] HA or any other entity." *Id*. "[B]efore adopting the Hylete Word Mark and the Hylete Logo Mark, … Wilson conducted online searches and searches of the [U.S. Patent and Trademark Office ("USPTO")] trademark database to make sure no other entities were using any marks that could be confusingly similar to the Hylete Logo Mark or the Hylete Word Mark." *Id*. "At the time … Wilson created the Hylete Marks in March 2012, he was not aware of any of [Defendant] HA's purported trademarks and was not even aware of [Defendant] HA." *Id*.

Defendants' "strategic plan to harm [Plaintiff] is further evidenced by the timing of [Defendants'] trademark applications." *Id*. at 9. Defendants "only applied to register [Defendant] HA's marks after [Plaintiff] applied to register the Hylete Word Mark and Logo Mark." *Id*. "And, in doing so, [Defendants] committed fraud on the USPTO …." *Id*.

"On July 28, 2010, [Defendant] Orlando filed a trademark application … for a mark that is essentially identical to … the mark reflected in the U.S. Trademark Registration No. 4480850 and the much-later issued … '469 Registration." *Id*. at 9-10. Defendant "Orlando filed this application for the [essentially identical] mark … for use on … '[s]hirts, athletic equipment, athletic training, and [athletic] programming.'" *Id*. at 10 (fifth alteration in original). "On November 6, 2010, the USPTO issued an Office Action rejecting [Defendant] Orlando's application …." *Id*. "On May 16, 2011, the USPTO issued another Office Action maintaining its denial of [Defendant] Orlando's application …." *Id*. at 11. On December 19, 2011, after no "further action from [Defendant] Orlando, the USPTO

issued its Notice of Abandonment of the application ….” *Id*. Defendant "Orlando did not continue prosecuting the [r]ejected [a]pplication after the Notice of Abandonment." *Id*.

"On July 2, 2013, [Defendant] Orlando filed a trademark application … for the mark HYBRID ATHLETICS … for use on … '[c]onducting fitness classes; [h]ealth club services, namely, providing instruction and equipment in the field of physical exercise; [p]ersonal fitness training services and consultancy; [and] [p]hysical fitness instruction.'" *Id*. at 13 (emphasis in original). "On October 25, 2013, the USPTO issued an Office Action rejecting the application for the HYBRID ATHLETICS … mark for being merely descriptive of the services offered." *Id*. at 14 (emphasis in original). On May 9, 2014, the USPTO again issued an Office Action rejecting [Defendant] HA's claims that the HYBRID ATHLETICS mark had acquired distinctiveness." *Id*. (emphasis in original). On April 21, 2015, "the USPTO finally allowed the application to register …." *Id*. at 15.

"Throughout the application process [for the HYBRID ATHLETICS mark], [Defendant] Orlando (individually and on [Defendant] HA's behalf) made false representations of material fact in a deliberate attempt to mislead the USPTO." *Id*. at 14.

> In his July 2, 2013 application, [Defendant] Orlando declared that "no other person, firm, corporation, or association has the right to use the [HYBRID ATHLETICS] mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive…".

*Id*. (second and third alteration and emphasis in original).

> In his November 10, 2014 declaration, [Defendant] Orlando declared that HYBRID ATHLETICS "is recognized in the trade and by consumers as [Assignee HA's] trademark, and as exclusively indicating [Assignee HA's] products and services."

*Id*. at 14-15 (second and third alteration and emphasis in original).

> These were each false representations of fact and [Defendant] Orlando knew that the representations were false at least because [Defendant] Orlando has admitted that he copied the 'Hybrid' mark from another entity and [Defendant] Orlando was aware of other entities using the identical or similar

7

marks, at least based on the prior filed applications the USPTO notified him of ….

*Id*. at 15.  "Moreover, [Defendant] Orlando testified that he believes that HYLETE is confusingly similar to HYBRID ATHLETICS, and [Defendant] Orlando was aware of [Plaintiff]'s substantial use of the HYLETE mark since 2012." *Id*. (emphasis in original). "The misrepresentations were also material at least because the USPTO would not have allowed the application if the applicant could not prove acquired distinctiveness through substantially exclusive use." *Id*.

On February 21, 2014, Defendant "HA filed [a] trademark application … for the ["H" logo] mark … for use on … '[b]ottoms; [h]eadwear; [and] [t]ops.'" *Id*. "[I]n reliance on the statements and representations of [Defendant] HA and/or [Defendant] HA's attorney[,] [sic] the USPTO allowed [Defendant] HA's application to register the ["H" logo] mark (the '469 Registration) on September 23, 2014." *Id*. at 17.

Defendant "HA claimed to have first used the ["H" logo] mark generally as of December 31, 2008 and to have first used the ["H" logo] mark in commerce as of December 31, 2008." *Id*. at 16.  Defendant "HA also claimed that on the filing date, the ["H" logo] mark was 'now in such use in commerce.'" *Id*.  Defendant "HA knew that the ["H" logo] mark was not in use in commerce as of December 31, 2008" because, "in the July 28, 2010 [r]ejected [a]pplication, [Defendant] Orlando declared that the [essentially identical] mark was first used in commerce on March 30, 2010 – not December 31, 2008." *Id*.  In an action brought by Defendant HA against Plaintiff for infringement of the '469 Registration[1], Defendant "HA has not been able to provide any documentation to support its contention that it first used the ["H" logo] mark with bottoms, headwear or tops prior to December 31, 2008." *Id*. at 16-17.  Defendant "HA has admitted that, about a year or two ago, it

---

[1] The Complaint alleges that Defendant HA filed suit against Plaintiff in the District of Connecticut on October 23, 2017 "alleging, among other things, infringement of … the '469 Registration … based on [Plaintiff]'s marketing and sales of apparel hearing the Hylete Marks." (ECF No. 1 at 18).

intentionally deleted electronic documents dated prior to 2011 …." *Id*. at 17. Defendant HA "has also stated that bottoms were sold 'after December 31, 2008.'" *Id*.

In Defendant HA's February 21, 2014 application for the "H" logo mark, Defendant "Orlando declared, on [Defendant] HA's behalf, that 'no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive…'." *Id*. (second alteration in original). "This was a false representation of fact and [Defendant] Orlando knew that the representation was false at least because [Defendant] Orlando was informed by the USPTO, in relation to his [r]ejected [a]pplication filed on July 28, 2010, that the [essentially identical] mark was likely to be confused with Blocking Registration No. 3656042 …." *Id*. Defendant "HA did not argue against the likelihood of confusion refusal, and instead attempted to amend the drawing of its mark to differentiate it from Blocking Registration No. 3656042 … by adding HYBRID ATHLETICS." *Id*. (emphasis in original).

### III. MOTION TO DISMISS

#### a. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted …." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citation omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)) (alteration in original). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations …." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

### b. Statutes of Limitations (Claims 1-6)

Defendants contend that all six of Plaintiff's claims are barred by statutes of limitations or laches. Defendants contend that the statute of limitations for Plaintiff's first claim (fraudulent procurement of the '469 Registration), second claim (cancellation of the '469 Registration), and fifth claim (violation of Connecticut Unfair Trade Practices Act) is three years. Defendants contend that the statute of limitations for Plaintiff's third claim (violation of Lanham Act 15 U.S.C. § 1125(a)) is presumed to be three years. Defendants contend that the statute of limitations for Plaintiff's fourth claim (violation of California Unfair Competition Law, Business and Professional Code § 17200) is four years. Defendants contend that the statute of limitations for Plaintiff's sixth claim (tortious interference with prospective economic advantage) is two years. Defendants assert that all of the statements Plaintiff alleges in the Complaint were made over four years ago.

Plaintiff contends that its first and second claims do not have a statute of limitations. Plaintiff contends that the remaining four claims are not time barred. Plaintiff asserts that Defendants fail to identify an allegation in the Complaint that demonstrates that the claims are time barred. Plaintiff asserts that the Complaint alleges that the actionable statements

occurred recently. Plaintiff asserts that Defendants have admitted to deleting potentially relevant documents. Plaintiff asserts that it was prevented from discovering some statements until recently because Defendants have improperly designated documents as confidential or for attorneys' eyes only and withheld documents.

The Complaint alleges that Plaintiff seeks "remedies for the fraudulent procurement of … the '469 Registration … pursuant to Section 38 of the Lanham Act, 15 U.S.C. § 1120" and "cancellation of the '469 Registration pursuant to section 37 of the Lanham Act, 15 U.S.C. § 1119 …." (ECF No. 1 at 2) (internal quotation marks omitted). The Complaint further alleges that Plaintiff seeks "remedies for false advertising under the Lanham Act," "for violations of the California Unfair Competition Law," "for violations of the Connecticut Unfair Trade Practices Act," and "for intentional interference with [Plaintiff]'s prospective economic advantage." *Id*.

"The Lanham Act contains no explicit statute of limitations." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002) (citation omitted). "When a federal statute lacks a specific statute of limitations, we generally presume that Congress intended to 'borrow' the limitations period from the most closely analogous action under state law." *Id*. (citations omitted). The Court of Appeals applies California's three-year fraud statute of limitations to Lanham Act claims. *See e.g.*, *id*. at 838 ("[T]he analogous limitations period is California's period for fraud, which is three years."); *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) ("Lanham Act claims are subject to a three-year statute of limitations …."). The Court of Appeals has stated that the three-year fraud statute begins to run upon the claimant's "actual or constructive knowledge of the wrong." *Karl*, 285 F.3d at 857 (citations omitted).

The California Unfair Competition Law states that "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208. The Court of Appeals has stated that "the four-year statute of limitations beg[i]n[s] to run on the date the cause of action accrued, not on the date of discovery." *Karl*, 285 F.3d at 857 (citing *id*.).

11

3:19-cv-02494-WQH-AGS

The Connecticut Unfair Trade Practices Act states that "[a]n action under this section may not be brought more than three years after the occurrence of a violation of this chapter." Conn. Gen. Stat. § 42-110g(f). The Connecticut Supreme Court has stated that the Act's three-year limitation period is triggered upon the occurrence of the alleged violation, not the discovery of the alleged practice. *See Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212 (1988) ("In construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years 'from the date of the act or omission complained of,' we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred.").

The Court of Appeals has stated that claims for "tortious interference with prospective economic advantage" pursuant to California law are subject to a "two-year statute of limitations …." *Jun-En Enter. v. Lin*, 654 F. App'x 347, 347-48 (9th Cir. 2016) (citing Cal. Civ. Proc. Code § 339(1)). The accrual of the statute of limitations is "postpone[d] … until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (citations omitted). "[W]e look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Fox v. Ethicon Endo–Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988).

The Complaint alleges that Defendant "HA filed [a] trademark application … for the ["H" logo] mark … for use on … '[b]ottoms; [h]eadwear; [and] [t]ops'" on February 21, 2014. (ECF No. 1 at 15). The Complaint alleges that Defendant "HA falsely declared and/or omitted material facts when it stated in [the] [t]rademark [a]pplication … that the ["H" logo] mark in the '469 Registration had been used on bottoms, headwear, and/or tops by December 31, 2008." *Id*. at 18, 20. The Complaint alleges that Defendant HA "knew that [it] had not used the mark in the '469 Registration on bottoms, headwear and tops by December 31, 2008" "[a]t the time of filing the … trademark application …." *Id*. at 18, 20.

The Complaint alleges that "the USPTO allowed [Defendant] HA's application to register the ["H" logo] mark (the '469 Registration) on September 23, 2014." *Id*. at 17. The Complaint alleges that "but for the misrepresentations and/or omissions of fact about the December 31, 2008 date of first use, the USPTO would not have issued the '469 Registration …." *Id*. at 19, 20.

The Court applies California's three-year fraud statute of limitations to Lanham Act claims, which begins to run upon the claimant's "actual or constructive knowledge of the wrong." *Karl*, 285 F.3d at 857 (citations omitted). On February 21, 2014, Defendant HA filed the allegedly fraudulent trademark application with the false declaration and/or omission of material facts. *See* ECF No. 1 at 15, 18, 20. If the Court utilizes February 21, 2014 as the date when Plaintiff attained "actual or constructive knowledge of" Defendant HA's fraudulent application, then Plaintiff was required to file its first and second claims pursuant to the Lanham Act by February 21, 2017. *Karl*, 285 F.3d at 857 (citations omitted). On September 23, 2014, the USPTO accepted Defendant HA's allegedly fraudulent trademark application and the '469 Registration was registered. *See* ECF No. 1 at 17. If the Court utilizes September 23, 2014 as the date when Plaintiff attained "actual or constructive knowledge of" Defendant HA's fraudulent application, then Plaintiff was required to file its first and second claims pursuant to the Lanham Act by September 23, 2017. *Karl*, 285 F.3d at 857 (citations omitted). Plaintiff fails to allege that it attained "actual or constructive knowledge of" Defendants' allegedly fraudulent application at a later date. *Id*. (citations omitted). In this case, Plaintiff filed the Complaint on December 30, 2019. The Court concludes that Plaintiff's first and second claims are untimely.

The Complaint alleges that Defendants "have made false and misleading statements of fact regarding [Plaintiff] and [Plaintiff]'s products in interstate commerce in this District" in violation of the Lanham Act, 15 U.S.C. § 1125(a). (ECF No. 1 at 21). The Complaint alleges that "[t]hese statements actually deceive, or have a tendency to deceive, a substantial segment of [Plaintiff]'s customers or potential customers by causing them to believe that [Plaintiff] stole [Defendant] HA's purported trademarks and applied them to [Plaintiff]'s

products." *Id*. The Complaint alleges that Defendants' "false and misleading advertising statements and omissions injured [Plaintiff] by damaging its business reputation among consumers and harming its commercial interests in sales." *Id*.

The Complaint alleges that Defendants "have engaged in unlawful, unfair and/or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in the conduct of trade or commerce" in violation of California Unfair Competition Law, Business and Professional Code § 17200. *Id*. at 22. The Complaint alleges that Defendants "have engaged in unfair methods of competition and unfair acts or deceptive acts or practices in the conduct of trade or commerce" in violation of the Connecticut Unfair Trade Practices Act. *Id*. at 24.

The Complaint alleges that Defendants "made false and misleading statements about [Plaintiff] and [Plaintiff]'s products in such manner as to imply business dishonesty and substandard product performance, including untrue statements that [Plaintiff] stole and/or copied [Defendant] HA's purported trademarks and applied them to [Plaintiff]'s products and that [Plaintiff] engaged in unethical business practices." *Id*. at 22-23, 24. The Complaint alleges that Defendants "coordinated with CrossFit to interfere with [Plaintiff]'s fundraising efforts by falsely telling a potential investor in [Plaintiff] that [Plaintiff] engaged in 'flagrant theft' of [Defendant] HA's trademarks." *Id*. at 23, 24. The Complaint alleges that Defendants and Defendant "HA's employees/coaches intentionally, falsely and maliciously made disparaging comments about [Plaintiff] and [Plaintiff]'s products." *Id*. at 23, 24-25.

The Complaint alleges that Defendants "have made and published injurious and disparaging statements about [Plaintiff] and [Plaintiff]'s products in such a manner as to imply business dishonest and substandard business performance, including untrue statements that [Plaintiff] stole and/or copied [Defendant] HA's purported trademarks and applied them to [Plaintiff]'s products and that [Plaintiff] engaged in unethical business practices." *Id*. at 26. The Complaint alleges that Defendants "made these false and misleading statements to [Plaintiff]'s actual customers, [Plaintiff]'s potential customers,

[Plaintiff]'s actual and potential customers in the CrossFit community, on social media, including Facebook, and to [Plaintiff]'s potential investors, knowing that the statements were misleading and deceptive, for the improper purpose of disparaging [Plaintiff] and [Plaintiff]'s products and interfering with [Plaintiff]'s business relationship with these parties by encouraging them to discontinue their business with [Plaintiff]." *Id*.

The Complaint alleges that

> [B]eginning in or around 2013 and continuing to the present time, [Defendants] have told (and directed [Defendant] HA's employees to tell) [Plaintiff]'s customers and [Plaintiff]'s potential customers that [Plaintiff] stole and/or copied [Defendant] HA's trademarks, to boycott [Plaintiff] and to not buy [Plaintiff]'s products…. Beginning in or around 2013 and continuing for several years thereafter, [Defendants] posted statements on social media stating that [Plaintiff] stole and/or copied [Defendant] HA's trademarks, and directing readers to boycott [Plaintiff] and not buy [Plaintiff]'s products. Beginning in in or around 2013 and continuing until at least 2018, [Defendants] told (and directed [Defendants] HA's employees to tell) [Plaintiff]'s customers in Connecticut that [Plaintiff] stole and/or copied [Defendant] HA's trademarks, to boycott [Plaintiff] and to not buy [Plaintiff]'s products.

*Id*. at 6-7. The Complaint further alleges that

> During a CrossFit event in 2013, [Defendants] told CrossFit that [Plaintiff] stole and/or copied [Defendant] HA's trademarks and told CrossFit to ban [Plaintiff] from all CrossFit events. CrossFit subsequently banned [Plaintiff] from all CrossFit events. [Defendant] Orlando indicated that he was happy to see [Plaintiff] suffer as a result of [Plaintiff] being banned from CrossFit events and that it "felt good."

*Id*. at 6-7. The Complaint further alleges that

> In 2015, [Defendants] coordinated with CrossFit to interfere with [Plaintiff]'s fundraising efforts by falsely telling a potential [Plaintiff] investor that [Plaintiff] engaged in 'flagrant theft' of [Defendant] HA's trademarks. The potential investor did not ultimately invest in [Plaintiff]. On information and belief, [Defendants] made similar statements to other potential investors in [Plaintiff].

*Id*. at 7.

The Court applies California's three-year fraud statute of limitations to Lanham Act claims, which begins to run upon the claimant's "actual or constructive knowledge of the wrong." *Karl*, 285 F.3d at 857 (citations omitted). If the Court utilizes 2013 as the year when Plaintiff attained "actual or constructive knowledge of" Defendants' allegedly false and misleading statements, then Plaintiff was required to file its third claim pursuant to the Lanham Act by 2016. *Karl*, 285 F.3d at 857 (citations omitted). Plaintiff fails to allege that it attained "actual or constructive knowledge of" Defendants' allegedly false and misleading statements at a later date. *Id.* (citations omitted). In this case, Plaintiff filed the Complaint on December 30, 2019. Plaintiff's allegations that Defendants' false and misleading statements "continu[e] to the present time," "continu[ed] for several years" after 2013, and "continu[ed] until at least 2018" are conclusory and do not satisfy the three-year statute of limitations requirement. (ECF No. 1 at 6-7). The Court concludes that Plaintiff's third claim is untimely.

Claims pursuant to the California Unfair Competition Law are subject to a four-year statute of limitations, which "beg[i]n[s] to run on the date the cause of action accrued, not on the date of discovery." *Karl*, 285 F.3d at 857 (citing Cal. Bus. & Prof. Code § 17208). If the Court utilizes 2013 as the year when "the cause of action accrued," then Plaintiff was required to file its fourth claim pursuant to the California Unfair Competition Law by 2017. *Id.* (citing Cal. Bus. & Prof. Code § 17208). In this case, Plaintiff filed the Complaint on December 30, 2019. The Court concludes that Plaintiff's fourth claim is untimely.

Claims pursuant to the Connecticut Unfair Trade Practices Act are subject to a three-year statute of limitations, which begins to run "from the date of the act or omission complained of …." *Fichera*, 207 Conn. at 212. If the Court utilizes 2013 as the year for "the date of the act or omission complained of," then Plaintiff was required to file its fifth claim pursuant to the California Unfair Competition Law by 2016. *Id.* In this case, Plaintiff filed the Complaint on December 30, 2019. The Court concludes that Plaintiff's fifth claim is untimely.

Claims for "tortious interference with prospective economic advantage" pursuant to California law are subject to a "two-year statute of limitations," which begins when "the plaintiff discovers, or has reason to discover, the cause of action." *Jun-En*, 654 F. App'x at 347-48 (citing Cal. Civ. Proc. Code § 339(1)); *Norgart*, 21 Cal. 4th at 389 (citations omitted). If the Court utilizes 2013 as the year when Plaintiff "discover[ed], or ha[d] reason to discover, the cause of action," then Plaintiff was required to file its sixth claim pursuant to the California Unfair Competition Law by 2015. *Norgart*, 21 Cal. 4th at 389 (citations omitted). Plaintiff fails to allege that it "discover[ed], or ha[d] reason to discover, the cause of action" at a later date. *Id.* (citations omitted). In this case, Plaintiff filed the Complaint on December 30, 2019. The Court concludes that Plaintiff's sixth claim is untimely.

### c. Laches (Claims 1-6)

A laches defense is premised on the maxim that "one who seeks the help of a court of equity must not sleep on his rights." *Jarrow*, 304 F.3d at 835 (citation omitted). To prevail on a laches defense, the defendant must show "that (1) [the plaintiff]'s delay in filing suit was unreasonable, and (2) [the defendant] would suffer prejudice caused by the delay if the suit were to continue." *Id.* at 838 (citation omitted).

"Courts have recognized two chief forms of prejudice in the laches context—evidentiary and expectations-based." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Id.* (citations omitted). "A defendant may also demonstrate prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id.* (citation omitted). "A defendant may establish prejudice by showing that during the delay, it invested money to expand its business or entered into business transactions based on his presumed rights." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999 (9th Cir. 2006) (citations omitted). A defendant "may also prove prejudice if as a result of entering into such business transactions during the delay, it may incur liability for damages." *Id.* at 1000 (citation omitted). Other examples of such prejudice include the defendant "chang[ing]

their … distribution activities in reliance on [the plaintiff's] conduct" or the defendant "continuing investments and outlays … in connection with the operation of its business." *Danjaq*, 263 F.3d at 955 (citations omitted). Defendants have failed to show that they "would suffer prejudice … if the suit were to continue." *Jarrow*, 304 F.3d at 838 (citation omitted). The Court concludes that Defendants' laches defense fails.

## IV. MOTION TO FILE DOCUMENTS UNDER SEAL

Defendants request to file under seal Defendants' Memorandum of Points & Authorities in Support of their Motion to Dismiss Counts 1-6 per Fed. R. Civ. P. 12(b)(6) and Motion to Strike Counts 4-6 per Cal. Code Civ. Pro. § 425.16. *See* ECF No. 15 at 2. Defendants further request to file under seal Exhibits 1, 13, 17, 19-24, 35, 40, 41, and 53 to the Kosma Declaration filed in support of Defendants' Motions. *See id*. Defendants assert that the documents contain information designated as confidential or for attorneys' eyes only pursuant to a protective order (ECF Nos. 70, 90) issued in *Hybrid Athletics v. Hylete, Inc. et al.*, No. 17-cv-01767-VAB (D. Conn.). *See id*. The docket reflects that Plaintiff has not filed a response to Defendants' Motion to File Documents Under Seal.

Plaintiff requests to file under seal Exhibits 1, 2, and 4 to the Deonarine Declaration filed in support of Plaintiff's Response in opposition. *See* ECF No. 19 at 2. Plaintiff asserts that the documents contain information designated by Defendant HA and CrossFit, Inc. as confidential or for attorneys' eyes only pursuant to a protective order (ECF Nos. 70, 90) issued in *Hybrid Athletics v. Hylete, Inc. et al.*, No. 17-cv-01767-VAB (D. Conn.). *See id*. The docket reflects that Defendants have not filed a response to Plaintiff's Motion to File Documents Under Seal.

"A party seeking to seal a judicial record ... bears the burden of overcoming th[e] strong presumption [of access to court records] by meeting the 'compelling reasons' standard." *Kamakana v. Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Under this stringent standard, a court may seal records only when it finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture." *Id*. at 1182 (citation omitted). What constitutes a "compelling reason" is "best left to the

sound discretion of the trial court ….." *Nixon v. Warner Commnc'ns Inc.*, 435 U.S. 589, 599 (1978). Examples include when a court record might be used to "gratify private spite or promote public scandal," to circulate "libelous" statements, or "as sources of business information that might harm a litigant's competitive standing …." *Id*. at 598-99.

The parties have shown compelling reasons that outweigh the public's interest in disclosure of these materials and justify filing the documents under seal at this stage in the proceedings. The Motion to File Documents Under Seal filed by Defendants (ECF No. 15) and the Motion to File Documents Under Seal filed by Plaintiff (ECF No. 19) are GRANTED.

## V.   CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendants Hybrid Athletics, LLC and Robert Orlando (ECF No. 17) is GRANTED. Plaintiff's Complaint is DISMISSED without prejudice. Any motion for leave to file an amended pleading must be filed within 30 days of this Order.

IT IS FURTHER ORDERED that the Motion to Strike filed by Defendants Hybrid Athletics, LLC and Robert Orlando (ECF No. 17) is DENIED as moot. The Court does not address the issue of commercial speech exemption in this Order.

IT IS FURTHER ORDERED that the Motion to File Documents Under Seal filed by Defendants Hybrid Athletics, LLC and Robert Orlando (ECF No. 15) is GRANTED.

IT IS FURTHER ORDERED that the Motion to File Documents Under Seal filed by Plaintiff Hylete, Inc (ECF No. 19) is GRANTED.

Dated:  May 21, 2020

Hon. William Q. Hayes
United States District Court